IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                  No. CR 11-2013 BB

DONALD LEE HOWARD,

       Defendant.

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                  No. CR 11-2014 BB

DOMINIC SAAVEDRA,

       Defendant.

COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER DENYING SUPPRESSION

       THIS MATTER came before the Court on Defendant Howard's *Motion to Suppress Evidence* in 11cr2013 [Doc. 20] and Defendant Saavedra's *Motion to Suppress Evidence* in 11cr2014 [Doc. 21], and having reviewed the briefs of counsel and having held an evidentiary hearing on March 1, 2012, the following are the Court's findings of fact and conclusions of law:

**Findings of Fact**

1. On May 20, 2011, Bernalillo County Sheriff Deputy J. Hessinger was conducting traffic enforcement in the area of Bridge Boulevard and Old Coors Boulevard SW. At approximately 1:00 AM, the deputy observed a dark-colored Lexus with New Mexico license plate LSY 873 traveling westbound on Bridge and turning north on Old Coors Boulevard, he could not see a functioning license plate light.

2. License plate lights are required pursuant to § 66-3-805C, NMSA 1978.

3. The deputy, who was in a marked patrol vehicle, engaged his emergency equipment and conducted a traffic stop of the Lexus at the intersection of Old Coors Boulevard and Gonzales Road SW. There were two occupants in the vehicle, later identified as Donald Howard and Dominic Saavedra. Saavedra was in the right front passenger seat.

4. When he stopped the Lexus, Deputy Hessinger testified that he saw both occupants moving around and that he called for assistance.

5. Deputy J. Beasley arrived at 1:09 AM in response to Deputy Hessinger's call for back-up.

6. Both Hessinger and Beasley observed the driver, Howard, crouch over in the driver's seat and appear to reach under the driver's seat. Howard made several furtive movements and swayed back and forth in his seat prior to Deputy Hessinger making contact with him.

7.  **Not knowing if Howard was placing or retrieving something, like a firearm, under the seat, Deputy Hessinger approached and had Howard step out of the vehicle.**

8.  **Meanwhile, Deputy Beasley approached the vehicle on the passenger side.**

9.  **Deputy Hessinger asked Howard why he was moving around so much when he was pulled over and if he had placed anything under the seat. Howard replied, "There is nothing in the car."**

10. **Deputy Hessinger shined his flashlight into the car through the open door. In plain view, Deputy Hessinger observed a silver-colored revolver sticking out from under the driver's seat.**

11. **Deputy Hessinger alerted Deputy Beasley to the presence of a firearm by using the code "1080."**

12. **For officer safety and for further investigation, Deputy Hessinger then attempted to place Howard in handcuffs pending the investigation; Howard, however, pulled away from Hessinger and began running from the scene. Deputy Hessinger pursued Howard and eventually Howard stopped and laid flat on the ground some distance from the scene.**

13. **Deputy Hessinger arrested Howard for resisting, evading or obstructing an officer.**

14. **Recognizing that Howard had fled, Deputy Beasley asked Saavedra to step out of the vehicle, did a *Terry* pat-down, handcuffed him, and detained him for further investigation.**

15. **Deputy Beasley found no weapons on Saavedra.**

16. **Because he had arrested Howard, Deputy Hessinger decided to tow the vehicle pursuant to Bernalillo County Sheriff's Department policy.**

17. **Pursuant to Bernalillo County Sheriff's Department policy, Deputy Hessinger did an inventory search of the vehicle. From under the driver's seat, Hessinger recovered the revolver he had seen. Between the passenger seat and the center console next to where Saavedra was sitting, Deputy Hessinger recovered a semiautomatic pistol. Both firearms were fully loaded.**

18. **The car was further searched, prior to towing. A small metal canister containing heroin was found on the floor of the right front passenger side.**

19. **Saavedra was then arrested for possession of drugs and being a felon in possession of a firearm.**

20. **Pursuant to the arrest, Deputy Beasley searched Saavedra's person and located a digital scale in Saavedra's front pants pocket.**

21. **The area where Deputy Hessinger stopped Howard is a high crime area. It was approximately 1:00 AM at the time of the stop.**

22. **Neither deputy turned on his belt recorder. No one took photographs of the Lexus, guns, metal can nor the drugs found.**

23.  **Deputy Hessinger never issued a citation to Howard for not having operable license plate lights.**

## Conclusions of Law

1.  **Before an officer may stop a vehicle, *United States v. Vazquez*, 555 F.3d 923, 928 (10th Cir. 2009), requires "a reasonable articulable suspicion" that a traffic violation has occurred or is occurring and not, in fact, that a traffic violation has occurred.**

2.  **An initial traffic stop is valid if based on an observed traffic violation, or if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. *United States v. Tibbetts*, 396 F.3d 1132, 1136-37 (10th Cir. 2005). That an officer's suspicions may ultimately prove unfounded does not vitiate the lawfulness of a stop, provided the officer's error was made in good faith and objectively reasonable under the circumstances. *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009); *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009).**

3.  **New Mexico law requires license plates be illuminated. Section 66-3-805(c), NMSA 1978, provides:**

    > **Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible.... Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as**

>    to be lighted whenever the headlamps or auxiliary driving lamps are lighted.

4. Deputy Hessinger had a reasonable belief that Howard's vehicle lacked the necessary equipment or had a non-functioning license plate light as Howard's vehicle went past the deputy. The stop of Howard was thus reasonable. *Cunningham v. Panola Cnty., Texas,* 2011 WL 2149537 (E.D. Tex.); *State v. Vallejos*, 2011 WL 2042050 (N.M. App.).

5. Once a motor vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription against unreasonable searches and seizure. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977); *United States v. Polly*, 630 F.3d 991, 998 (10th Cir. 2011).

6. In *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), the Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."

7. Deputy Hessinger properly ordered Howard to exit the vehicle.

8. In *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968), the Supreme Court recognized that a protective safety search for weapons was different in kind and scope from a full search upon probable cause. An "officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was*

*in danger*." [Citations omitted]. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (Emphasis added). *Terry,* **392 U.S. at 27.** The reasonableness of the officer's suspicions is judged by an objective standard taking the totality of the circumstances and information available to the officers into account. *United States v. Sanchez*, **519 F.3d 1208, 1213 (10th Cir. 2008).**

9. Deputy Hessinger shined his flashlight through the open door of the car and saw a silver-colored revolved sticking out from under the driver's seat. He then knew that Howard had tried to hide or retrieve the revolver and had lied to him about having it in the car.

10. After seeing the revolver, Deputy Hessinger had reasonable suspicion that Howard was armed and dangerous.

11. For officer safety reasons, Deputy Hessinger decided to handcuff Howard. As Deputy Hessinger reached for Howard's wrist to put handcuffs on him and do an investigatory detention, Howard pulled away and fled.

12. Deputy Beasley believing he needed to aid Deputy Hessinger in foot pursuit of Howard, had to place Saavedra in the back of his unit to maintain the status quo and continue the investigation.

13. **Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.** *United States v. McKissick*, **204 F.3d 1282, 1297 n. 5 (10th Cir. 2000) (citing** *United States v. Anchondo*, **156 F.3d 1043, 1045 (10th Cir. 1998)).**

14. **During the inventory search of Howard's vehicle, Deputy Hessinger reached between the passenger seat and the center console next to where Saavedra was sitting and recovered a semiautomatic pistol. Both firearms located in the vehicle were fully loaded.**

15. **In addition to the firearms, on the floorboard of the front passenger side of the vehicle where Saavedra was sitting, Deputy Hessinger found a tin can. Upon opening the tin can, Deputy Hessinger found 41 individually wrapped small plastic baggies containing a black tar-like substance (23.1 gross grams) which appeared to be heroin. Deputy Hessinger field tested the black tar-like substance which tested presumptively positive for heroin. The deputies had probable cause to arrest Saavedra.**

16. **At the suppression hearing, Saavedra failed to establish that but for the alleged unconstitutional conduct of the deputies, the firearms and the drugs found in the Lexus would not have come to light. The discovery of the firearms and the drugs**

were the direct result of the arrest of Howard and the subsequent inevitable inventory of the Lexus.

All tendered findings and conclusions not incorporated herein are deemed Denied.

### ORDER

Based on the above findings of fact and conclusions of law, Defendant Howard's *Motion to Suppress Evidence*, in 11cr2013 [Doc. 20] and Defendant Saavedra's *Motion to Suppress Evidence* in 11cr2014 [Doc. 21, ] are DENIED.

SO ORDERED this 22nd day of March, 2012.

_____
**BRUCE D. BLACK**
**Chief United States District Judge**